**CABINET VISION and Larry Cornwell, Plaintiffs–Appellants,**

v.

**CABNETWARE, Defendant–Appellee.**

No. 96–1420.

United States Court of Appeals, Federal Circuit.

Nov. 10, 1997.

John Allcock, Gray, Cary, Ware & Freidenrich, San Diego, CA, argued for plaintiffs-appellants. Of counsel on the brief was Cathy Ann Bencivengo.

Chris Gibson, Boutin, Dentino, Gibson & Di Giusto, Sacramento, CA, argued for defendant-appellee. Of counsel on the brief was Mark P. Grajski. Of counsel was R. Michael West, Lothrop & West, Sacramento, CA.

Before MAYER, RADER, and BRYSON, Circuit Judges.

MAYER, Circuit Judge

Cabinet Vision and Larry Cornwell appeal the judgment of the United States District Court for the Southern District of California, 94–CV–62, holding unenforceable United States Patent No. 5,255,207 for inequitable conduct during prosecution of the patent before the Patent and Trademark Office. Because the district court erred in holding that

the jury's factual findings on inequitable conduct were advisory, we vacate and remand.

## Background

Larry Cornwell, president of Cabinet Vision, applied for a patent on a method for designing and detailing cabinets using an interactive computer system. The Patent and Trademark Office ("PTO") granted Cornwell United States Patent No. 5,255,207 (the '207 patent). Cornwell, in turn, granted Cabinet Vision an exclusive license to sell a cabinet design software program encompassing the invention claimed by the '207 patent. Cabinet Vision then filed suit against Cabnetware and its owners, Roy and David Bingham, alleging infringement of the '207 patent, copyright infringement and misappropriation of trade secrets.[1] In its complaint, Cabinet Vision demanded a jury trial. Along with its answer, antitrust counterclaim, and jury demand, Cabnetware and the Binghams filed motions to dismiss the Binghams and to join Cornwell as an additional plaintiff and counter-defendant, which the district court granted. Cornwell and Cabinet Vision (collectively "Cabinet Vision") filed a second amended complaint, again demanding a jury trial. In its answer, Cabnetware alleged that it did not infringe the '207 patent, that the patent was invalid for anticipation or obviousness in light of prior art—including its own software—and for lack of enablement. Cabnetware also asserted the affirmative defense of inequitable conduct and a Walker Process[2] antitrust counterclaim, for which it demanded a jury trial.

Cabinet Vision subsequently submitted a Memorandum of Contentions of Fact and Law, in which it argued that "[t]he decision respecting inequitable conduct is a discretionary decision to be made by the trial court on its own factual findings, there is no right to a jury trial respecting the factual element of culpable intent as part of the defense of inequitable conduct." Cabnetware agreed, arguing that there is no right to a jury trial on inequitable conduct because the defense is within the court's equitable authority. Cabnetware also requested that the judge decide all non-jury matters without the aid of an advisory jury. However, Cabnetware requested that the factual issues underlying all other issues, which appear to include the Walker Process antitrust counterclaim, be left to the jury. The district court incorporated Cabinet Vision's statement on inequitable conduct verbatim into its pretrial order, which both parties signed in approval of its form and content, and which states: "This case shall be tried by a jury."

Cabinet Vision then moved, *in limine*, to bar Cabnetware from arguing its inequitable conduct defense to the jury. Specifically, it argued:

> There is no right to a jury trial respecting the factual element of culpable intent as part of the defense of inequitable conduct. As the court will make this determination, not the jury, Cabinet Vision requests the court exclude any argument before the jury on this defense. It is not the province of the jury to make findings on this question and argument stating Cornwell defrauded the PTO, or acted with culpable intent, would only be for purposes of creating unfair prejudice and to confuse the issues or mislead the jury.

(Citations omitted). Cabnetware responded:

> Mr. Cornwell's fraud on the Patent Office is an element of Defendant's counterclaim against Plaintiffs for attempted monopolization. A counterclaim for treble damages under the antitrust laws is triable to a jury as of right. Plaintiffs in this action have demanded a jury trial. Therefore, Defendant has the right to argue to the jury that Mr. Cornwell practiced fraud on the Patent Office.
>
> Because Defendant has the right to argue Mr. Cornwell's fraud as part of its antitrust counterclaim, excluding argument on the inequitable conduct defense would have little practical effect. After all, the jury will have already heard the evidence of Mr.

---

1. Cabnetware moved for and the court granted summary judgment on the trade secret and copyright claims, neither of which form a basis for this appeal.

2. *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

Cornwell's fraud. Furthermore, the jury may make findings on this defense for use by the court. Finally, when do plaintiffs propose that Defendant argue the inequitable conduct defense? In a separate argument before the court? That would be duplicative and an unnecessary use of the court's time.

(Citations omitted). The court denied Cabinet Vision's motion *in limine,* stating tentatively, "relative to [Cabnetware's] monopoly theory, ... I think that their position is sound, and ... I think [evidence and argument on inequitable conduct] will be received by the trier of fact." Three days into the trial, the court further explained how it intended to use the jury's verdict. "My preference would be to present all of the issues to this trier of fact. Those that are issues for the court, they can be advisory from this jury. Those that are binding are binding." However, at that time, the court did not specify which issues would be advisory and which would be binding.

Cabinet Vision and Cabnetware submitted joint jury instructions, which included the following:

> To conclude that Larry Cornwell engaged in inequitable conduct, you must find that the following facts have been proved by clear and convincing evidence:
>
> One, that Larry Cornwell knowingly made a misrepresentation to the Patent Office, directly or through his attorney, either by false statement or nondisclosure;
>
> Two, that any such misrepresentation or omission was material; and
>
> Three, that Larry Cornwell acted with an intent to mislead the Patent Office.

For the purposes of Cabnetware's antitrust counterclaim, the jury was instructed that it had to find, *inter alia,* that had the misrepresentation or omission been "known by the Patent Office, [it] would have resulted in the denial of the patent."

The jury was also provided a special verdict form, stipulated to and jointly submitted by Cabinet Vision and Cabnetware. This form was organized so that questions about infringement preceded questions addressing the various invalidity affirmative defenses,

inequitable conduct before the PTO, the antitrust counterclaim, and damages. For inequitable conduct in particular, question 7 read: "Do you find that Cabnetware proved by clear and convincing evidence that Larry Cornwell engaged in inequitable conduct before the Patent and Trademark Office?" If the jury answered "no" to question 7, it was directed not to reach questions pertaining to the antitrust counterclaim, including question 10, which stated: "Do you find by clear and convincing evidence that Larry Cornwell intentionally withheld or deliberately falsified information that, had the Patent Office known about it, would have resulted in the Patent Office denying the patent to Larry Cornwell?"

After deliberating for three days, the jury reported that it could not reach a unanimous verdict on the enablement question, but that it had reached a unanimous verdict on the other questions. The jury found that Cabnetware infringed the three asserted claims of the '207 patent, infringement was not willful, claims from the '207 patent were not anticipated or obvious, and in response to question 7, that Cornwell had not engaged in inequitable conduct. The jury did not reach damages because it could not resolve the enablement question. After dismissing the jury and entering a partial verdict, the court held a status conference to discuss what further proceedings would be necessary to resolve the enablement and damages issues. At that conference, the court ordered the parties to brief the issue of whether the court was bound by the jury's factual finding on Cabnetware's affirmative defense of inequitable conduct.

Following briefing, the court stated: "A party cannot lose the right to a jury verdict merely because the district court hears the equitable claims first; rather, the jury's factual findings on the legal issue control the resolution of those same factual issues in equitable claims decided by the court." It nevertheless held that as a result of the sequence of questions in the special verdict form—in which the jury answered question 7, inequitable conduct, but never reached the antitrust counterclaim in questions 8 through

13—the court was not bound by the jury's fact findings for inequitable conduct.

> If a potential Seventh Amendment problem existed from the sequence of the questions on the special verdict, it was avoided here because, first, the jury's finding on inequitable conduct was merely advisory, thus, the court is free to disregard it and the underlying factual determinations; and second, the jury did not reach the antitrust monopoly claim. The jury left the antitrust question blank. Thus, nothing the jury did binds this court's ability to find the facts as it sees them when resolving the inequitable defense claim.

The court then stated that, to the extent that treating the jury's fact finding as advisory could be considered error, Cabinet Vision had invited the error by failing to "advise the court on how to separate and manage those issues that were for the court and those that were for the jury." In addition, it held that the '207 patent was invalid for inequitable conduct and that both parties' motions for judgment as a matter of law, filed after the partial verdict, were therefore moot.

Cabinet Vision proposed a modification to the court's order on the basis that the jury did not fail to reach the antitrust claim. In response, the court issued a second order reaffirming that the jury's answer to question 7 did not bind the court to a factual finding on the antitrust counterclaim. In this order the court stated: "[T]he court would have been bound by the common fact finding when it ruled on the inequitable conduct defense (whether or not the jury answered question 7)." However, the court then allowed Cabnetware to dismiss its antitrust counterclaim without prejudice, and stated: "In the event that Cabnetware refiles the antitrust claim, Cabinet Vision would have the option of raising as a defense that this jury's finding on inequitable conduct was advisory for the purposes of the court's ruling on inequitable conduct but it was binding for purposes of the antitrust claim." Cabinet Vision timely appealed from this second order.[3]

### Discussion

Cabinet Vision argues that fact finding common to the inequitable conduct defense and the Walker Process counterclaim cannot be separated and that the district court erred in disregarding the jury's factual findings. Cabnetware responds that even if the court erred in separating the common factual questions, it was entitled to take the jury's finding on question 7 as merely advisory and to dismiss the Walker Process counterclaim because Cabinet Vision invited the error, Cabinet Vision waived its right to a jury trial on the inequitable conduct issue, and any error is harmless because the court could have granted judgment as a matter of law. Thus, this appeal presents two related questions: did the district court abuse its discretion by separating the fact finding common to the legal and equitable claims—leading it to hold that jury findings on the inequitable conduct defense were advisory and not binding for the legal claim, and did Cabinet Vision waive its right to a jury trial of the facts common to both issues—presented in questions 7 and 10.

### A. Discretion

The Seventh Amendment to the United States Constitution reads: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."[4]

---

**3.** The court later ordered costs and attorney fees to Cabnetware. Cabinet Vision's appeal of this order is the subject of Appeal No. 96–1522.

**4.** Here, the term common law "denominate[s] ... suits in which legal rights were to be ascertained and determined in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered". *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830). Cabnetware's antitrust counterclaim is one such action. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 503, 79 S.Ct. 948, 952–53, 3 L.Ed.2d 988 (1959). However, by itself, Cabnetware's affirmative defense of inequitable conduct seeks relief by way of the court's equitable powers; it is not a suit at common law and therefore cannot alone entitle the parties to a jury trial. *See Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.,* 984

The district court determined that it was free of Seventh Amendment restrictions and Cabnetware was free to refile its antitrust action because the jury never considered Cabnetware's antitrust counterclaim and because the jury's factual findings on inequitable conduct were merely advisory. We review the decision to forego a binding jury determination of factual issues common to a legal and equitable claim for abuse of discretion, recognizing that such discretion is narrowly limited in these circumstances and "must, wherever possible, be exercised to preserve jury trial." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959).

■ In *Beacon Theatres*, the Supreme Court reemphasized the jury's preeminent role in making factual determinations when simultaneously trying legal and equitable claims that are based on common factual elements:

> " In the Federal Courts this [jury] right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency." This longstanding principle of equity dictates that only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.

*Id.* (footnotes omitted) (quoting *Scott v. Neely*, 140 U.S. 106, 109–10, 11 S.Ct. 712, 714, 35 L.Ed. 358 (1891)). Accordingly, whatever discretion exists to override a jury's fact finding in such situations, this discretion is reviewed carefully. *See, e.g., Beacon Theatres*, 359 U.S. at 501, 79 S.Ct. at 951 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.")).

In this case, the jury's answer to question 7—which asked whether Cornwell knowingly made a misrepresentation or omission to the PTO, whether the misrepresentation or omission was material, and whether Cornwell acted with the intention of misleading the PTO—resolved in the negative at least one of the questions of fact necessary to both the Walker Process counterclaim and the defense of inequitable conduct. We have long recognized that a Walker Process counterclaim and an affirmative defense of inequitable conduct share common factual elements. *See, e.g., FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1417, 5 USPQ2d 1112, 1117 (Fed.Cir. 1987) ("failure to establish inequitable conduct precludes a determination that [FMC] had borne its greater burden of establishing the fraud required to support its *Walker Process* claim").

To be sure, an inequitable conduct defense and a Walker Process counterclaim are not identical in scope or consequence, for "[t]he patent fraud proscribed by *Walker* is extremely circumscribed" in comparison with inequitable conduct. *Argus Chem. Corp. v. Fibre Glass–Evercoat Co.*, 812 F.2d 1381, 1384, 1 USPQ2d 1971, 1974 (Fed.Cir.1987) (quoting *Cataphote Corp. v. DeSoto Chem. Coatings, Inc.*, 450 F.2d 769, 772, 171 USPQ 736, 738 (9th Cir.1971)). Nevertheless, we are satisfied that the facts underlying Cabnetware's inequitable conduct defense and its Walker Process counterclaim possess "substantial commonality" so that, because the jury answered question 7, the Seventh Amendment constrains the court's equitable determination. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212, 2 USPQ2d 2015, 2019 (Fed.Cir.1987).

By conceptually separating the fact finding common to both causes of action, the district court misled itself into believing that the jury's fact findings could be merely advisory as to the inequitable conduct, and that the counterclaim could be dismissed because the verdict was not binding on the counterclaim and the jury did not address the antitrust issue. But given the design of these jury

instructions, the jury did not fail to address questions 8 through 13 related to the Walker Process counterclaim. It resolved the factual dispute by way of its answer to question 7. These errors cannot be excused, even if Cabinet Vision failed to "advise the court on how to separate and manage those issues that were for the court and those that were for the jury." Interpretation of the law is the responsibility of the court.

### B. *Waiver*

 Cabnetware argues that Ninth Circuit·law[5] approaches waiver rules—Federal Rules of Civil Procedure 38 and 39—in a manner consistent with their purpose, without indulging in a formalistic, literal, or strict reading. *See Fuller v. City of Oakland,* 47 F.3d 1522, 1531 (9th Cir.1995) (citing cases). Cabnetware contends that a waiver can be found where a court has entered an order or made a statement without exception from either party, where a party argues that a judge may decide the particular matter, or where the party participates in a bench trial without exception. *See White v. McGinnis,* 903 F.2d 699, 703 (9th Cir.1990) (en banc). Cabnetware further contends that Cabinet Vision waived its right to a jury trial of the facts underlying the inequitable conduct defense and the Walker Process counterclaim by: approving the pretrial order in which the court stated that the resolution of inequitable conduct was for the trial court on its own factual findings; arguing in the motion *in limine* that the judge should decide the facts underlying the inequitable conduct defense; and failing to object when the court expressed its preference to send all issues to the jury and to treat the jury's verdict as advisory on issues for the court.

Each alleged written statement and oral stipulation referenced by Cabnetware, however, can also be reasonably interpreted as an acknowledgment that, absent the Walker Process counterclaim, the inequitable conduct defense would present factual questions for the trial judge. This interpretation is consistent with the court's later statement that, had the jury decided the factual question underlying the antitrust issue presented in question 10, and had it been decided before the inequitable conduct issue in question 7, the court would have been bound by the jury's verdict for both issues. Given that a court must indulge every reasonable presumption against a finding of waiver, ambiguity should be resolved against inferring waiver. Although circumstances were such that both parties may have acted with differing, though reasonable interpretations about what Cabinet Vision was arguing, we do not believe that Cabinet Vision waived a jury trial for the common fact finding. *See White,* 903 F.2d at 703 n. 9 & n. 10.

### C. *Harmful Error*

██ ▪ Although the evidence may support judgment as a matter of law on the inequitable conduct issue, we cannot say that the errors are harmless. Cabnetware did not move for judgment as a matter of law, and the record does not show that the trial court considered whether there is a sufficient evidentiary basis for a reasonable jury to find for Cabinet Vision on Cabnetware's affirmative defense and counterclaim. On review we are not positioned to engage in such speculation.[6]

### Conclusion

Accordingly, we vacate the judgment of the United States District Court for the Southern District of California and remand the case for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*

---

5. Because waiver of a jury trial is a procedural matter not unique to patent law and is accomplished pursuant to local rules, we look to the law of the regional circuit. *See Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1278, 35 USPQ2d 1035, 1041–42 (Fed.Cir.1995).

6. We decline appellant's request that we direct reassignment of the case on remand.