# United States Court of Appeals for the Federal Circuit

2008-1263


NETCRAFT CORPORATION,

Plaintiff-Appellant,

v.


EBAY, INC. and PAYPAL, INC.,

Defendants-Appellees.


Frank E. Scherkenbach, Fish & Richardson P.C., of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were Robert E. Hillman and Craig R. Smith; and Michael J. Kane and William R. Woodford, of Minneapolis, Minnesota.

Morgan Chu, Irell & Manella LLP, of Los Angeles, California, argued for defendants-appellees. With him on the brief were Samuel K. Lu and C. Maclain Wells.

Appealed from: United States District Court for the Western District of Wisconsin

Chief Judge Barbara B. Crabb

# United States Court of Appeals for the Federal Circuit

2008-1263

NETCRAFT CORPORATION,

Plaintiff-Appellant,

v.

EBAY, INC. and PAYPAL, INC.,

Defendants-Appellees.

Appeals from the United States District Court for the Western District of Wisconsin in case no. 3:07-CV-00254, Chief Judge Barbara B. Crabb.

_____

DECIDED: December 9, 2008

_____

Before BRYSON, LINN, and PROST, Circuit Judges.

PROST, Circuit Judge.

This is a patent infringement case involving internet billing methods. Plaintiff Netcraft Corporation sued eBay, Inc. and PayPal, Inc. (collectively "Defendants") for infringement of two related patents: U.S. Patent Nos. 6,351,739 ("'739 Patent") and 6,976,008 ("'008 Patent"). The district court construed a phrase that appears in both patents, "providing a communications link through equipment of the third party," to require "providing customers with internet access." Netcraft Corp. v. Ebay, Inc., No. 3:07-CV-00254, 2007 U.S. Dist. LEXIS 91806, at *2 (W.D. Wis. Dec. 10, 2007) ("Claim Construction Order"). The parties agreed that Defendants do not provide internet access to customers, and the district court therefore granted Defendants' motion for

summary judgment of non-infringement. Because we agree with the district court's claim construction, we affirm.

## I. BACKGROUND

The technology involved in this appeal generally relates to internet billing methods. PayPal offers online payment services. eBay is the parent of PayPal, and offers online auction services. Plaintiff Netcraft sued eBay and PayPal in the United States District Court for the Western District of Wisconsin, alleging infringement of the '739 and '008 Patents (collectively "the asserted patents").

The asserted patents are both entitled "Internet Billing Method." They also both claim priority to the same parent patent—U.S. Patent No. 5,794,221 ("'221 Patent")—and share a common specification. Both asserted patents are assigned to Netcraft. Andrew Egendorf—the president of Netcraft—is the named inventor on both patents.

Representative Claim 1 of the '739 Patent reads:

1. An Internet billing method for a plurality of customers and a plurality of vendors of products or services for transactions over the Internet between a purchasing customer of the plurality of customers and a selling vendor of the plurality of vendors, wherein, for each purchase transaction, a transaction amount is charged to the purchasing customer, and an amount is remitted to the selling vendor, comprising the steps by a third party of:

> a) establishing a billing agreement with the purchasing customer, and a remitting agreement with the selling vendor, to bill the purchasing customer, and to remit to the selling vendor, for products and services purchased over the Internet by the purchasing customer from the selling vendor;

> b) <u>providing a communications link through equipment of the third party</u> between the purchasing customer and the selling vendor through which the purchasing customer obtains information from the selling vendor with respect to a purchase of a product or service by the purchasing customer from the selling vendor;

> c) obtaining at least one billing authorization for the purchase;

> d) charging the transaction amount to the purchasing customer in accordance with the billing agreement; and
>
> e) remitting an amount related to the purchase to the selling vendor in accordance with the remitting agreement.

'739 Patent col.7 ll.21-48 (emphasis added).

The phrase at issue in this appeal, "providing a communications link through equipment of the third party," appears in all asserted claims of both asserted patents. Neither the term "communications link" nor the phrase "communications link through equipment of the third party" is found in the parent '221 Patent or the common specification of the asserted patents.

In construing this phrase, the district court first addressed the asserted claims themselves, noting that "the claim itself does not define 'communications link' the way defendants propose." Claim Construction Order at *3. While the district court reasoned that the "lay understanding of 'communications link' is much broader than 'internet access,'" it recognized that "courts cannot look at the claims in isolation or at just the lay understanding of them, but must consider the patent as a whole." Id. The district court noted that "the specification makes it unmistakably clear that the invention requires that the third party provide internet access to the customer." Id. at *4. It concluded that the phrase "communications link" is the only part of the claim that could incorporate this requirement, and construed the phrase "providing a communications link" as requiring "providing customer access to the internet." Id. In support of its construction, the district court cited many portions of the common specification (including the Abstract and the Summary of the Invention), and stated that "[i]n countless instances, the specification refers to the third party as the 'provider,' which plaintiff conceded at the claim construction hearing means 'internet access provider.'" Id. at *5.

The district court was unconvinced by Netcraft's attempts to show that the specification's references to the provider connecting customers to the internet were just particular embodiments, as opposed to describing the invention as a whole. Id. at *5-6. It also rejected several claim differentiation arguments made by Netcraft. Id. at *6-9. Finally, even though both parties advanced prosecution history arguments in support of their respective claim construction positions, the district court determined that "it is unnecessary to consider those arguments when the patent itself is clear." Id. at *9. Because the parties agreed that Defendants do not provide internet access to customers, the district court granted Defendants' motion for summary judgment of non-infringement. Id. at 10.

Netcraft appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295.

## II. DISCUSSION

This appeal involves a single question of claim construction. Precisely, we must decide whether the district court erred in construing "providing a communications link through equipment of the third party" to require that the third party provide customers with internet access. Claim Construction Order at *2.

We review a district court's claim construction de novo. Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd., 476 F.3d 1321, 1326 (Fed. Cir. 2007). As this court explained in Phillips v. AWH Corp., "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotations omitted). Claim terms are generally construed in accordance with the ordinary and customary meaning they would

have to one of ordinary skill in the art. Id. at 1312-13. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. at 1313. In addition to considering the specification, courts should consider the prosecution history of an asserted patent if it is in evidence. Id. at 1317. "Although we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence . . . ." Id. That being said, "while extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." Id. (quotations omitted). Mindful of these principles, we turn to the phrase at issue in the present case—"providing a communications link through equipment of the third party."

On appeal, Netcraft maintains that the claim language itself does not support the district court's construction. It also argues that the specification does not support, and is in fact inconsistent with, the district court's claim construction and that the district court erred by refusing to consider the prosecution history. We address these arguments in turn.

With respect to the claim language, Netcraft argues that the ordinary meaning of "communications link" is much broader than the district court's construction, and that neither the claim language nor ordinary meaning supports including a requirement that the third party must provide internet access. Defendants respond that the actual phrase construed by the district court was "providing a communications link through equipment of the third party," not simply "communications link," and that read in light of the

specification this phrase must include a requirement that the third party provide internet access.

The asserted claims themselves do not expressly indicate whether "providing a communications link through equipment of the third party" requires that the third party provide internet access. Indeed, the term "communications link" is never used in the parent '221 Patent or the common specification of the asserted patents. While the lay meaning of "communications link" standing alone may be broader than "internet access," we are not construing this term standing alone. See Phillips, 415 F.3d at 1321 ("Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent."). In order to properly determine the ordinary meaning of the entire phrase at issue in this case, we must consider the claim terms in light of the entire patent. As explained further below, based on a reading of the common specification in its entirety, along with the cited prosecution history, we conclude that the claim limitation "providing a communications link through equipment of the third party" requires providing customers with internet access.

Construing the phrase in dispute to require providing customers with internet access is supported by the Summary of the Invention, which states:

> The main object of the present invention is to create a new business opportunity for telephone companies, cable television companies, existing Internet access providers, and companies offering financial services by creating a way for them to offer to their subscribers a method of securely buying and selling goods and services of any value over the Internet.

> Another object of the present invention is an Internet billing method which is cost effective for transactions having transaction amounts ranging from pennies to a few dollars.

> Still another object of the present invention is to provide a secure method of billing commercial transactions over the Internet.

A further object of <u>the present invention</u> is an Internet billing method which is simple to use from both the customer's point of view and that of vendors on the Internet.

Yet another object of <u>the present invention</u> is a billing method which can be used by a large number of existing Internet users without requiring major changes in how the users customarily behave and conduct commercial transactions.

These and other objects of <u>the present invention</u> are achieved by an Internet billing method in accordance with <u>the present invention</u>. A provider establishes an agreement with a customer, and a second agreement with a vendor, wherein the provider agrees with the customer and the vendor to bill for products and services purchased over the Internet by the customer from the vendor. Associated with the customer agreement are one or more billing accounts to which purchases may be charged. Associated with the vendor agreement are one or more methods of remitting funds to the vendor. <u>The provider creates access to the Internet for the customer through the provider's equipment</u>. When the customer orders a product or service over the Internet from the vendor, the provider obtains transactional information transmitted between the customer and the vendor including a transaction amount relating to the ordered product or service and the provider then bills the transaction amount to a customer billing account and remits a portion of the transaction amount to the vendor.

'739 Patent col.1 l.61–col.2 l.34 (emphases added).

Netcraft argues that there is no "general rule that any use of 'the present invention' in the specification automatically limits the claims, as Defendants seem to believe." Appellant's Reply Br. 22; <u>see also</u> <u>id.</u> at 19 ("Defendants contend that the case law supports the draconian result that any use of the phrase 'present invention' limits the claims to the embodiment described."). We agree with Netcraft that use of the phrase "the present invention" does not "automatically" limit the meaning of claim terms in all circumstances, and that such language must be read in the context of the entire specification and prosecution history. <u>See</u> <u>Rambus Inc. v. Infineon Techs. AG</u>, 318 F.3d 1081, 1094 (Fed. Cir. 2003). For the reasons below, however, we agree with the district court that the common specification's repeated use of the phrase "the present

invention" describes the invention as a whole, see Claim Construction Order at *6, and, as will be discussed further below, that the prosecution history does not warrant a contrary result.

The first two sentences of the Abstract also support the district court's construction. These sentences read: "An Internet billing method comprises establishing an agreement between an Internet access provider and a customer . . . . The provider creates access to the Internet for the customer." '739 Patent, at [57]. Netcraft attempts to minimize the significance of this language by noting that the asserted patents' Abstract is the same as the original Abstract in the parent '221 Patent. It submits that "[b]ecause the '221 patent claims are directed to a third party that provides Internet access to customers, the original Abstract naturally includes a discussion of this aspect." Appellant's Reply Br. 17. According to Netcraft, "[t]his does not mean . . . that every claim in the entire patent family should be limited to the features of the common Abstract as Defendants suggest." Id. at 17-18. Netcraft's arguments on this point, however, illustrate the following underlying problem with its claim construction position: the common specification, including the Abstract, consistently describes the invention in terms of a third party providing internet access to customers.

While Netcraft concedes that "the third party in the [asserted] patents' detailed examples is an Internet access provider," it claims that other embodiments do not require that the third party provide customers with internet access. Id. at 16. Specifically, Netcraft points to Figs. 2 and 3 of the asserted patents, and argues that the use of the language "Connect Customer to Internet" in Fig. 2, step 12, should be

differentiated from the use of the language "Customer Connects to Internet" in Fig. 3, step 22. Id. at 16-17. Thus, Netcraft claims that the difference in language between Fig. 2, step 12, and Fig. 3, step 22, "expressly demonstrates that the invention does not require providing Internet access to the customer." Id. at 17. We disagree.

There is no language in the specification, much less express language, indicating that the words "Customer Connects to Internet" used in Fig. 3, step 22, were meant to disclose an alternative embodiment not requiring that the third party provide internet access to customers. In fact, there are other differences between Figs. 2 and 3, including steps 11 and 21 respectively, which more clearly differentiate the two methods. Additionally, we note that the specification appears to describe the methods shown in Figs. 2 and 3 in context of the system illustrated in Fig. 1. See '739 Patent col.5 ll.58-66. In that context, while the specification indicates that certain vendors may access the internet directly using their own equipment, the only way for customers to access the internet is through the equipment of the provider. Accordingly, we reject Netcraft's arguments that the specification includes additional embodiments that do not involve the provision of internet access to customers by the third party.

Moreover, as Defendants argue, the district court's construction is further supported by the language of the phrase at issue, which requires that the "communications link" be provided "through equipment of the third party." The common specification consistently uses the term "equipment" in reference to equipment that enables internet access. For example, the Summary of the Invention states that "[t]he provider creates access to the Internet for the customer through the provider's equipment." '739 Patent col.2 ll.26-28; see also id. col.1 ll.23-26 ("These providers

invest in the equipment needed to provide access to the Internet for subscribers who pay the providers a fee for the access."); id. col.1 ll.30-35 ("[A] party desiring to connect to the Internet by means of a provider typically connects via a modem over a telephone network to the provider's equipment which then connects the party, through the provider's equipment, to the Internet."); id. col.3 ll.6-10 ("Once the prearrangements have been completed, using the provider's service to connect to the Internet typically involves calling a telephone number of the provider and being automatically connected through the provider's equipment to the Internet.").

Turning to Claim 6 of the '739 Patent, Netcraft makes several claim differentiation arguments. Claim 6 of the '739 Patent reads: "The method according to claim 1, 2, 3, 4, or 5, wherein the third party is an Internet access provider, a cable television company, a telephone company, or a company offering financial services." Netcraft argues that "if claim 1 were truly limited to third parties that provide Internet access, claim 6 would be redundant in listing an 'Internet access provider' as a possible third party." Appellant's Br. 17. It also argues that within claim 6 the differentiation between internet access providers and the other possible third parties (i.e., a cable television company, a telephone company, or a company offering financial services) is inconsistent with requiring that all third parties provide internet access.

As the district court observed, however, in several locations the specification contemplates the possibility that other companies, including cable television and telephone companies, will provide customers with internet access. Claim Construction Order at *7-8 (citing '739 Patent col.1 ll.29-30, col.2 ll.64-65). Additionally, as the district court noted, the following portion of the Summary of the Invention distinguishes

"existing" internet access providers from other entities who may also provide internet access: "The main object of the present invention is to create a new business opportunity for telephone companies, cable television companies, existing Internet access providers, and companies offering financial services . . . ." Id. at *8-9 (quoting '739 Patent col.1 ll.61-64). We agree with the district court that this passage suggests that the "new business opportunity" for companies, including financial services companies, involves the provision of internet access.[1] Id. at *9. Thus, we are not persuaded by Netcraft's claim differentiation arguments.

In addition, Netcraft attributes significance to the omission of financial services companies from the following portion of the specification: "Such providers can be, for example, companies whose only business is to offer connection to the Internet, companies which offer on-line computer services, one of which is connection to the Internet, cable television companies, or telephone companies." '739 Patent col.2 ll.61-65. As the district court determined, however, "[a]lthough the patent does not include financial service companies in its lists of examples of internet access providers, e.g., '739 pat., col. 2, lns. 61-65, that does not mean that such companies cannot be providers. An invention is not limited to its examples." Claim Construction Order at *8.

---

[1] Furthermore, even if we agreed with Netcraft that the district court's claim construction led to some redundancy, that alone would not necessarily warrant a different result in this case. While claim differentiation may be helpful in some cases, it is just one of many tools used by courts in the analysis of claim terms. See, e.g., Nystrom v. Trex Co., 424 F.3d 1136, 1142-43 (Fed. Cir. 2005) (construing the term "board" to mean a "piece of elongated construction material made from wood cut from a log," even though principles of claim differentiation suggested that the term "board" should not be limited to wood cut from a log).

2008-1263                             11

Accordingly, we agree with the district court that the claims read in light of the entire specification indicate that "providing a communications link through equipment of the third party" requires providing customers with internet access.  Our inquiry does not end here, however, as we still must consider the parties' arguments based on the prosecution history.  See Phillips, 415 F.3d at 1317 (stating that, in addition to considering the specification, courts should also consider the prosecution history of an asserted patent, if it is in evidence).

The parties offer conflicting explanations of the respective prosecution histories of both asserted patents and several related patents.  Netcraft, for example, argues that the following portion of the '739 Patent's prosecution history supports its claim construction position:

> Claim 31 is the only independent claim and recites an Internet billing method wherein "a communications link through equipment of the third party" is provided "between the purchasing customer and the selling vendor" (claim 31(b)).  This link can be made, for example, by the third party re-sending data it receives from the customer or from the vendor to the other party, or by the third party hosting on its equipment an Internet presence of the vendor (e.g., a World-Wide-Web site of the vendor or an e-mail address of the vendor).

J.A. 119.  Netcraft maintains that the parenthetical reference to examples of websites and email demonstrate ways to make a communications link that do not require that the third party provide internet access.

Defendants respond that these "are not alternative embodiments, but optional additional functions.  The method of providing a customer with access to the Internet and these additional functions (web page hosting and email) are not mutually exclusive." Appellees' Br. 54.  They submit that the following portion of the prosecution history of the '221 Patent confirms that these examples are optional additional functions, as

opposed to alternatives: "[t]he present invention, by contrast, does not require the use of E-mail (because the Internet access provider is connected to the customer by a dedicated line), although E-mail may be used, if desired." J.A. 1505.

Defendants also argue that the prosecution history of the '008 Patent supports the district court's construction. Specifically, Defendants submit that, during prosecution of the '008 Patent, Netcraft sought claims with the limitation "providing a communications link over the Internet," J.A. 1247 (emphasis added), but the Examiner rejected these claims in light of the prior art, J.A. 1253. Then, the Examiner allowed the claims after Netcraft changed the limitation to "providing a communications link through equipment of the third party." J.A. 1266 (emphasis added). Thus, Defendants argue that Netcraft's claim construction position must be rejected because the construction of the phrases "through equipment of the third party" and "over the Internet" must differ. Appellees' Br. 56. Additionally, Defendants point to the following statements, made in response to a rejection in light of U.S. Patent No. 5,826,241 ("Stein reference") during prosecution of the '739 Patent, in support of the district court's construction:

> Applicant respectfully submits that Stein et al neither discloses nor suggests providing a system for allowing access to the Internet.
>
> Specifically, the Stein et al system . . . assumes that the users 14 (buyers and sellers) are already connected to the Internet . . . there is no disclosure . . . that suggests that Stein et al will provide access to the Internet. . . . There is never a connection of a user to the Internet through the payment system 10.

J.A. 1235.

We have considered the cited prosecution history and conclude that it lacks the clarity of the specification regarding the meaning of the claim terms at issue here, thus rendering it less useful for claim construction purposes. See Phillips, 415 F.3d at 1317

("[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."). For example, when the discussion of the Stein reference is read in context with the Examiner's prior statements, it is not entirely clear whether that discussion was meant to characterize the present invention as requiring the provision of internet access, or whether it was meant to simply refute the Examiner's prior assumption that the Stein reference involves the provision of internet access. Similarly, considered in context of all of the cited prosecution history, it is unclear whether the website and email parenthetical examples are optional functions provided in <u>addition</u> to internet access, or whether they are offered as <u>alternatives</u> to the provision of internet access.[2]

In sum, we conclude that the portions of the prosecution history cited by the parties are not particularly helpful to either party's claim construction position. Thus, while we agree with Netcraft that the district court should have considered the prosecution history, its failure to do so was harmless error here because we reach the same result having considered it.[3] See <u>Claim Construction Order</u> at *9 (concluding that

---

[2]     Likewise, we have considered, but are not persuaded by either party's arguments based on the prosecution histories of the related patents.

[3]     Finally, we reject Netcraft's request that we rely on extrinsic evidence in the present case. Netcraft claims that prior to suit eBay "considered partnering with Netcraft, and clearly indicated to Mr. Egendorf that it was interested only in the '739 and '008 patents, and not interested in the patents where the claims were limited to third parties providing Internet access." Appellant's Br. 24. Defendants respond, however, that they "never stated that the patents-in-suit cover entities not providing access to the Internet and, in fact, all of the documents to which Netcraft cites are communications <u>from Netcraft to eBay</u>." Appellees' Br. 43. Nevertheless, even if we assume that Netcraft's factual description is correct, we would still conclude that it is insufficient to overcome the claim meaning discernable from the intrinsic record here. See <u>Phillips</u>,

it was unnecessary to consider the prosecution history because the patent itself is clear).

## III. CONCLUSION

Because we conclude that the phrase "providing a communications link through equipment of the third party" requires providing customers with internet access, we affirm the district court's grant of Defendants' motion for summary judgment of non-infringement.

<u>AFFIRMED</u>

---

415 F.3d at 1319 ("In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.").