CHRISHA CREATIONS, LTD., Plaintiff,

v.

DOLGENCORP, INC., Dollar General Corporation, and Family Dollar Stores, Inc., Defendants.

No. 08 Civ. 1065(MGC).

United States District Court, S.D. New York.

Sept. 28, 2011.

"the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B).

Edwards Angell Palmer & Dodge, LLP, by: Peter C. Schechter, Esq., Jennifer L. Dereka, Esq., New York, NY, for Plaintiff.

Kudman Trachten Aloe LLP, by: Thomas M. Furth, Esq., Alisa Silverstein, Esq., New York, NY, for Defendants.

## OPINION

CEDARBAUM, District Judge.

Chrisha Creations, Ltd. sues Dolgencorp., Inc., Dollar General Corp., and Family Dollar Stores, Inc. for infringing U.S. Patents Nos. 7,302,769 ("the '769 patent") and 7,216,446 ("the '446 Patent"). Because the parties do not agree on the correct construction of certain terms used in the claims of the '769 patent, I held a hearing in accordance with *Markman v. Westview Instruments*, 52 F.3d 967, 979 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

## BACKGROUND

The parties market and sell cold-air inflatable displays, often used for seasonal lawn decoration, advertising, and event attraction. A cold-air inflatable display is made from a permeable fabric skin and inflated by a continuously blowing fan. Because the air blown into the display escapes through the fabric at the same rate as the new air supplied from the fan enters, the display maintains its shape without any need for a frame.

The invention claimed in the '769 patent is the fan assembly that inflates these displays. According to the background section in the '769 patent, prior displays relied on fan assemblies which are permanently affixed to the fabric. Since the fan assembly in those displays is a permanent component, a consumer who wished to purchase multiple displays was required to buy multiple fan assemblies. Yet not every purchaser of multiple displays has a need for multiple fan assemblies. Many such purchasers exhibit only one seasonally appropriate display at a time, such as a Santa Claus around Christmas and an Uncle Sam around Independence Day. The permanent affixation of the fan assembly to the fabric prevents those consumers from buying a single fan that can be used in a number of displays. The '769 patent claims a fan assembly that solves this problem. According to the patent specification, that fan assembly is "interchangeable" between different displays, which eliminates the need to buy a new fan assembly with every new display.

On December 4, 2007, the U.S. Patent and Trademark Office ("PTO") issued the '769 patent, entitled "Interchangeable Fan Assembly for Cold–Air Inflatable Displays," to inventor William Machala. Machala subsequently assigned the '769 patent to plaintiff Chrisha Creations. The '769 patent contains three independent claims (claims 1, 6, and 12) and ten dependent claims (claims 2, 3, 4, 5, 7, 8, 9, 10, 11, and 13). Plaintiff alleges that defendants' device infringes claim 6 of the '769 patent, in which the inventor describes his invention as a coldair inflatable display compris-

ing a permeable fabric, an interchangeable fan assembly, and a lighting arrangement.

"Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute." *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed.Cir.1999). Plaintiff alleges that defendants market and sell cold-air inflatable displays in which the fan assembly is attached to the display's fabric skin via a single-use cable tie. The cable tie is threaded through a sheath in the display's fabric and is then pulled taut around a groove in the housing that encases the fan. This procedure secures the fan to the fabric. Once fastened, the cable tie cannot be loosened. As a result, in order to transfer a fan between displays using the accused device, one must cut through the cable tie securing the fan to the first display and use a new cable tie to secure it to the second display.

The parties disagree about the meaning of claim 6's language, which is discussed below.

## DISCUSSION

### I. Canons of Claim Construction

■ The first step of a patent infringement analysis is determining the meaning and scope of the patent claims alleged to have been infringed. *Markman*, 52 F.3d at 976. This step, commonly called claim construction, is an issue of law exclusively for the court. *Id.* at 970–71. Its purpose is to "elaborat[e] the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed.Cir.2001). A court should construe "only those [claim] terms ... that are in controversy, and only to the extent necessary to resolve the controversy." *McNeil–PPC, Inc. v. Perrigo Co.*, 443 F.Supp.2d 492, 501 (S.D.N.Y.2006) (alterations in original) (quoting *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed.Cir.1999)).

■ Interpretation of the asserted claims begins with a review of the intrinsic evidence. Intrinsic evidence includes the claim language, the written description that precedes the claims in the patent specification, and, if in evidence, the prosecution history. *DeMarini Sports*, 239 F.3d at 1323. "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996).

*Claim language*

■ The Patent Act requires a patent applicant to conclude a patent specification "with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, para. 2. Those claims "define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc). Accordingly, claim construction begins with the words of the claims themselves. *Vitronics*, 90 F.3d at 1582. A claim's terms are to be construed as would "a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application," understand them. *Phillips*, 415 F.3d at 1313.

*Written description*

■ Although the claims define the scope of the invention, they do not stand alone. Rather, "they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification,

of which they are a part." *Id.* at 1315 (internal citations and quotation marks omitted). By statute, a specification must provide "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, para. 1. This written description generally consists of an abstract of the invention, a description of the invention's background, a summary of the invention, patent drawings, and a detailed description that discusses preferred embodiments of the invention. *See Inv. Tech. Group, Inc. v. Liquidnet Holdings, Inc.*, Nos. 07 Civ. 510 & 07 Civ. 6886, 2010 WL 199912, at *3 (S.D.N.Y. Jan. 19, 2010).

Although the written description is always important for claim construction, the Federal Circuit has stressed the need to be wary of importing limitations from the written description into a claim that is not so limited on its face. *Phillips*, 415 F.3d at 1323. In particular, it has cautioned that claims are not necessarily confined to the specific embodiments presented in the written description. *Id.* In assessing "whether a person of skill in the art would understand the embodiments to define the outer limits of the claim term or merely to be exemplary in nature," a court should be mindful that:

> [o]ne of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodi-

ments in the specification to be strictly coextensive. The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent.

*Id.* (internal citation omitted).

*Prosecution History*

The last form of intrinsic evidence is the history of the patent's prosecution before the PTO. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317. This doctrine of claim disclaimer prevents patentees from "recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.Cir.2003). The doctrine does not apply, however, unless the alleged disavowal of claim scope would be unambiguous to one of ordinary skill in the art. *Id.* at 1324. In other words, "[f]or a prosecution statement to prevail over the plain language of the claim, the statement must be clear and unmistakable such that the public should be entitled to rely on any definitive statements made during prosecution." *Elbex Video, Ltd. v. Sensormatic Elec. Corp.*, 508 F.3d 1366, 1373 (Fed.Cir.2007) (internal quotation marks omitted).

## II. The disputed terms

The parties disagree about the meaning of two terms that appear in claim 6, "interchangeable fan assembly" and "securing device ... for joining." The language of claim 6, with the disputed terms emphasized, is:

> A cold-air inflatable display, comprising: a permeable fabric forming an inflatable figure with a hollow body;

an *interchangeable fan assembly* for continuously-blowing air into said hollow body, said fan assembly comprising at least one fan, a housing for said fan, a *securing device disposed along a border of said housing for joining* said fan assembly to said permeable fabric through a receiving opening positioned on said hollow body above a surface-touching bottom of said hollow body; and

a lighting arrangement extending through an interior portion of said hollow body, comprising a power cord connected to said fan and at least one lighting element secured to said power cord; wherein said *interchangeable fan assembly* is a lightweight assembly elevated above said surface-touching bottom of said hollow body without a base support and without distorting said figure when said cold-air inflatable display is inflated.

*"Interchangeable fan assembly"*

■ First, the parties disagree about how broadly "interchangeable fan assembly" should be read. Plaintiff argues that a fan assembly is "interchangeable" as long as it is "capable of being removed from one inflatable device and used in place of a fan or fans of another inflatable device." (Pl.'s Proposed Findings of Fact & Conclusions of Law ¶ 66.) The term as construed by plaintiff encompasses any means whatsoever of detaching the fan assembly from one display and attaching it to another.

Since this construction contemplates only a one-way transfer, a fan assembly could qualify as interchangeable even if the only way to remove it from its inflatable display is by rendering that display unusable. For several reasons, a person having ordinary skill in the art would not read the term this way. First, the prefix "inter" denotes reciprocity. An interchangeable fan assembly is a fan assembly

that is not only capable of being transferred from one display to another display, which is all that plaintiff's construction requires, but also capable of being transferred back to the first display.

■ Second, impairing a display in order to accomplish the transfer would not serve the inventor's stated purpose of enabling the use of a single fan assembly with multiple displays. "In construing claims, the problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed.Cir.1997).

■ Third, the construction would encompass the prior art from which the patentee was seeking to distinguish his invention. Even a fan assembly that is permanently affixed to the fabric skin of an inflatable device could, as plaintiff construes the disputed term, be "removed from [that] inflatable device and used in place of a fan or fans of another inflatable device." One would need only to cut out the section of the skin to which the fan assembly is affixed and then attach that section of fabric, with the fan assembly still affixed, to the skin of a second device. A disputed term should not be read so broadly as to encompass prior art if the patent invokes that term to distinguish the invention as superior. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed.Cir.2001); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed.Cir.1998). For these reasons, a fan assembly cannot qualify as interchangeable unless it can be transferred without damaging the display.

Defendants propose an additional limitation on the meaning of interchangeable. They contend that a fan assembly is interchangeable only if it is "designed or intended to be movable between a plurality of available structures without effort or

resources beyond those of an unskilled homeowner." (Defs.' Proposed Findings of Fact & Conclusions of Law ¶ 37.) That construction is compelled, defendants argue, by the written description's portrayal of the consumers to whom the invention is targeted. In trying to describe why prior fan assemblies' lack of interchangeability was a problem, the written description offers the plight of a consumer who purchases "a jack-o-lantern inflatable display for the Halloween season, a snowman inflatable display for the holiday season, and an Uncle Sam inflatable display for Independence Day." '769 Patent col. 1 ll. 61–65. Because "the fan assembly is a significant cost component of inflatable devices, the lack of interchangeability between fan assemblies for different displays significantly increases the cost to purchasers of multiple inflatable devices." *Id.* col. 1 l. 67–col. 2 l. 4. The written description later identifies the invention's advantage over the prior art as "reducing cost to purchasers and increasing their ability to enjoy the benefits of numerous inflatable displays." Col. 2 ll. 26–28. Based on those professed goals, defendants argue that a fan assembly is not "interchangeable" unless average homeowners could accomplish the transfer with the minimal tools and skills that they could reasonably be expected to possess.

Yet even if these statements demonstrate the invention's intended user, they still do not support the defendants' proposed limitation. Nowhere in the '769 patent or its prosecution history are particular tools or skill sets mentioned. Defendants have not cited any case in which a court limited a claim term based solely on the expertise of the target consumer.

Accordingly, I construe the term "interchangeable fan assembly" to mean "a fan assembly that is capable of being moved between inflatable displays without causing damage to those inflatable displays."

*"Securing Device . . . for joining"*

 The parties also disagree about the meaning of the term "securing device . . . for joining." Defendants' proposed construction is "a structure for attaching and detaching two pieces of fabric; one of which is a piece of fabric which is part of the fan assembly and the other a permeable fabric that forms an inflatable figure." (Defs.' Proposed Findings of Fact & Conclusions of Law ¶ 37.) They reach this construction by reading the term as a means-plus-function element under 35 U.S.C. § 112, paragraph 6, which provides:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

 If a term is determined to be a means-plus-function element, it is construed in two steps: first, identification of the claimed function; second, identification of the corresponding structure in the written description of the patent which performs that function. *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed.Cir.2006). Defendants contend that the phrase "securing device . . . for joining" claims the functions of securing and joining. They further contend that the structure that the written description supplies for performing those functions is two pieces of fabric, one a part of the fan assembly and the other the skin of the display, that may be attached or detached via mated male and female components. Thus, defendants reason, the term should be limited to that structure.[1]

1. Although defendants argue that the term requires mated male and female components,

their proposed construction, "a structure for attaching and detaching two pieces of fabric;

·Plaintiff counters that "securing device ... for joining" is not a means-plus-function element and, therefore, should not be keyed to the particular structures disclosed in the written description. Plaintiff correctly observes that the word "means" does not appear in the claim, triggering a rebuttable presumption that § 112, paragraph 6 does not apply. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed.Cir.2002). According to plaintiff, if that statute does not apply, the term ought to be read broadly. Just how broadly plaintiff does not say, for it has not proposed an alternative to defendants' construction. Nevertheless, plaintiff indicated during the *Markman* hearing that the term's scope should extend at least far enough to cover defendants' product. It argued that the groove in the fan housing around which the cable tie is fastened qualifies as a securing device within the meaning of claim 6.

■■■ This argument is premature. Assessing the similarity between the accused product and the patent claim is a question of fact that can be answered only after the court has construed the claim. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed.Cir.1998).

In any event, there is no need to resolve the question of whether the disputed term is a means-plus-function element. Even if plaintiff is correct that "securing device ... for joining" is not a means-plus-function element, defendants' construction is still proper based on the intrinsic evidence. The term "securing device" does not appear in the written description's discussion of the interchangeable fan assembly. But

wherever the written description depicts the interchangeable fan assembly's fastening to the display's fabric skin, it refers to a fabric-to-fabric connection. For example:

The Summary of the Invention speaks of "affixing the fan assembly to a standard-sized piece of fabric that is detachable from one display and reattachable to another display by joining the male fastening device of the standard-sized piece of fabric with the female fastening device of the other display." '769 Patent col. 2 ll. 29–34.

The Detailed Description of the Invention discloses that the fan housing is secured to the standard-sized fabric, *id.* col. 3 ll. 42–46, and that around the edge of that standard-sized fabric is a "male fastening device for attaching interchangeable fan assembly through a receiving opening to female fastening device of inflatable display," *id.* col. 3 ll. 59–62 (figure references omitted).

The Detailed Description of the Invention also discloses that the transfer of the interchangeable fan assembly may be completed by "securing interchangeable fan assembly through a receiving opening to inflatable display by joining male fastening device to female fastening device. Interchangeable fan assembly is secured to a standard-sized piece of permeable fabric fitted for attachment to ... female fastening device on inflatable display." *Id.* col. 4. ll. 8–15 (figure references omitted).

The drawings of the interchangeable fan assembly, with the accompanying expla-

one of which is a piece of fabric which is part of the fan assembly and the other a permeable fabric that forms an inflatable figure," does not include any such requirement. Because not every structure for attaching and detaching pieces of fabric need rely on a mated connection between male and female components (for example, two pieces of fabric could

fasten via magnets), defendants' proposed construction is actually broader than what their arguments require. But since a court should construe a disputed term "only to the extent necessary to resolve the controversy," *Vivid Techs.*, 200 F.3d at 803, I do not consider a construction any narrower than defendants' proposal.

nations in the Detailed Description of the Invention, uniformly depict male and female fasteners that enable fabric to secure to fabric. *Id.* figs. 1–3, 5.

These references to a fabric-to-fabric connection define the term, not merely its preferred embodiments. The uniformity with which the written description identifies a securing device that creates a fabric-to-fabric connection between the fan assembly and the display's skin would lead a person of ordinary skill in the art to believe that this is the only sort of securing device claimed in the patent. In numerous cases, the Federal Circuit has relied on such uniformity in restricting a disputed term to the structures disclosed in the written description even though that restriction was not compelled by the claim language alone. *E.g., Edwards Lifesciences LLC v. Cook Inc.,* 582 F.3d 1322, 1329–30 (Fed.Cir.2009) (limiting the term "graft" to intraluminal grafts because, among other reasons, the only graft devices described in the specification were intraluminal); *id.* at 1331 (construing the same term to require wires because "every embodiment described in the specification and shown in the drawings includes wires"); *ICU Med., Inc. v. Alaris Med. Sys., Inc.,* 558 F.3d 1368, 1375 (Fed.Cir. 2009) (construing the term "spike" to mean a pointed instrument, and rejecting a broader construction that would have included even a non-pointed structure, because the written description "repeatedly and uniformly" described the spike as a pointed structure without ever suggesting "that the spike can be anything other than pointed"); *Kinetic Concepts, Inc. v. Blue Sky Med. Group,* 554 F.3d 1010, 1019 (Fed.Cir.2009) (limiting the term "wound" to mean an injury to the skin surface because all examples offered in the written description involve skin wounds).

Plaintiff disputes the premise that the written description envisions an exclusively fabric-to-fabric form of securing device. It cites to a passage in the Detailed Description of the Invention in which the inventor states: "Male fastening device for attaching interchangeable fan assembly to female fastening device is illustrated in the preferred embodiment to comprise a zipper system, but other means of attachment such as *fasteners,* buttons, hook and loop fastening tape, or the like can be used." '769 Patent, col. 3 ll. 62–67 (emphasis added). Plaintiff reasons that the suggestion of using "fasteners," which could connote any conceivable mechanism for attachment, indicates that the securing device claimed in the patent encompasses all attachment mechanisms. Yet the inclusion of the ostensible catch-all "fasteners" in a list otherwise composed of fabric-to-fabric attachment mechanisms does not expand the universe of devices claimed as the invention. If fasteners had as expansive a connotation as plaintiff ascribes to it, then the passage's presentation of fasteners as an alternative to zippers or buttons would be unnecessary—"fasteners" alone would be broad enough to cover all embodiments.

Further support for defendants' proposed construction is found in the written description's explicit identification of a fabric-to-fabric connection as a part of "the invention," rather than part of an embodiment. The Summary of the Invention states that "[t]he invention also includes an interchangeable fan assembly," and "immediately identifies that interchangeable fan assembly as one affixed to a piece of fabric that attaches to the display's skin via a male-to-female fastening device...." *Id.* col. 2 l. 26. It is well established that when a patent describes a particular feature using language such as "the invention" or "the present invention," the description limits the scope of the invention. *E.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.,* 595 F.3d 1340 (Fed.Cir.2010); *Decisioning.com, Inc. v. Federated Depart-*

*ment Stores, Inc.,* 527 F.3d 1300, 1309–11 (Fed.Cir.2008); *TiVo, Inc. v. EchoStar Commc'n Corp.,* 516 F.3d 1290, 1300 (Fed. Cir.2008); *Honeywell Int'l, Inc. v. ITT Indus., Inc.,* 452 F.3d 1312, 1318 (Fed.Cir. 2006).

▉▉▉ Plaintiff contends that the doctrine of claim differentiation counsels against defendants' proposed construction. Under that doctrine, "[w]hen different words or phrases are used in separate claims, a difference in meaning is presumed." *Nystrom v. TREX Co., Inc.,* 424 F.3d 1136, 1143 (Fed.Cir.2005). Plaintiff first points to independent claim 1, which claims in relevant part:

> an interchangeable fan assembly for continuously-blowing air into said hollow body, said fan assembly comprising at least one fan, a housing for said fan *secured to a piece of fabric having a male securing device disposed along a border of said standard-sized fabric for receipt by a female securing device* disposed along a border of a receiving opening joining said fan assembly to said permeable fabric through said receiving opening positioned on said hollow body above a surface-touching bottom to allow optimum airflow through said fan into said hollow body ....

'769 Patent col. 4 ll. 31–41 (emphasis added). According to plaintiff, the presence of the fabric-to-fabric limitation in independent claim 1 precludes a construction of independent claim 6 that involves the same limitation.

▉▉▉ But claim differentiation "is not a rigid rule but rather is one of several claim construction tools." *ICU Med.,* 558 F.3d at 1376. "Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper." *Nystrom,* 424 F.3d at 1143. Thus, in *ICU Medical,* the court

relied on the written description to construe the term "spike" as requiring a pointed tip, even though claim differentiation counseled otherwise. 558 F.3d at 1376. And in *Nystrom,* the court relied on the written description and prosecution history to construe the term "board" to mean a "piece of elongated construction material made from wood cut from a log," even though claim differentiation suggested that the term should not be limited to wood cut from a log. 424 F.3d at 1142–43. Such overlapping constructions are particularly common where, as here, the claims at issue are all independent. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed.Cir.2006) (quoting *Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1567 n. 15 (Fed.Cir.1990)) ("It is not unusual that separate claims may define the invention using different terminology, especially where ... independent claims are involved."). Because the written description indicates that a structure connecting two pieces of fabric was the only sort of securing device contemplated for the invention, the doctrine of claim differentiation does not apply as between independent claims 1 and 6.

Plaintiff also argues that claim 6 should be differentiated from dependent claim 10, which recites the additional element of "a zipper system having a male securing zipper and female securing zipper for joining said fan assembly to said permeable fabric." '769 Patent, col. 5 ll. 30–33. This proposition is correct so far as it goes. Yet it simply precludes a construction of the securing device in claim 6 as limited to a zipper system. It does not, by contrast, preclude a construction of the securing device in claim 6 as encompassing any device that fastens fabric to fabric.

The prosecution history, the final piece of intrinsic evidence that I must consider,

is ambiguous. In an Office Action dated December 1, 2006, the patent examiner rejected the claims of the application that eventually issued as the '769 patent. The examiner's basis for the rejection was a finding of obviousness under 35 U.S.C. § 103(a) in light of the prior art. On February 28, 2007, the inventor submitted a response *("Response")* in which he argued that the prior art "fail[s] to teach, disclose or suggest the elements recited in amended Claim 1, or any of the similar independent Claims 7[which issued as claim 6] and 13, or the claims which depend therefrom." *Response* at 7. The inventor summarized the patentable distinction from the prior art as:

> a fan assembly having at least the following: (1) "a housing for said fan secured to a standard-sized fabric having a male securing device disposed along a border of said standard-sized fabric for receipt by a female securing device disposed along a border of a receiving opening joining said fan assembly to said permeable fabric through said receiving opening positioned on said hollow body above a surface-touching bottom" and (2) "a lightweight assembly secured to said permeable fabric above said surface-touching bottom of each hollow body without a base support and without distorting said figure when said cold-air inflatable display is inflated."

*Id.* Essentially identical language appears again toward the end of the inventor's remarks. *Id.* at 9.

Defendants contend that the first section of this passage, which describes a securing device for attaching fabric to fabric, constitutes a disclaimer of all securing devices that do not attach fabric to fabric. *See Phillips,* 415 F.3d at 1317. Plaintiff disagrees. According to plaintiff, the inventor's response asserted two separate, alternative points of distinction over the prior art: a fabric-to-fabric securing device and a lightweight assembly secured above the surface-touching bottom of the display. Plaintiff maintains that only the latter asserted distinction was meant to refer to claim 6 (at that time numbered as claim 7). The former, on the other hand, was meant to refer exclusively to those claims whose terms are expressly limited to securing devices that attach fabric to fabric. That is, plaintiff reads the inventor's response as asserting the lightweight assembly secured above the surface-touching bottom— but not the fabric-to-fabric securing device—as the distinction that achieves the patentability of what issued as claim 6 of the '769 patent.

"[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* That is the case here. The inventor's remarks are at least ambiguous enough to fall short of the clear and unmistakable disavowal required for prosecution disclaimer. *See Elbex Video,* 508 F.3d at 1371–72. Nevertheless, although the prosecution history does not narrow the claim, neither does it broaden the claim. The construction of the term thus relies on the rest of the intrinsic evidence, which favors defendants' proposed construction. *See Netcraft Corp. v. eBay, Inc.,* 549 F.3d 1394, 1401 (Fed.Cir.2008) (construing disputed claim term based on other sources of intrinsic evidence where the prosecution history cited by the parties was not helpful to either party's claim construction position).

Accordingly, I construe the term to mean "a structure for attaching and detaching two pieces of fabric, in which one piece of fabric is part of the fan assembly and the other is a permeable fabric that forms an inflatable figure."

## CONCLUSION

For the foregoing reasons, the disputed terms are properly construed as explained above.

SO ORDERED.